Alex B. Hernandez, III
Federal Defenders of Eastern Washington & Idaho
306 E. Chestnut Ave.
Yakima, WA 98901
(509) 248-8920

Attorney for Defendant
Robert Ray Root

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Stanley A. Bastian

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>Robert Ray Root,<br><br>　　　　　　　　　Defendant. | No.  1:22-CR-2018-SAB-1<br><br>**Defendant's Sentencing Memorandum** |

　　　Robert Ray Root is 53 years old and suffers from physical pain, depression, anxiety, and schizophrenia.  Mr. Root has never been to prison and his last contact with law enforcement was in 2005 for a driving with a no valid operator's license.  Now, he faces a significant term of imprisonment for receiving and distributing child pornography.

　　　Mr. Root recognizes his offenses are serious and that there is a five-year mandatory minimum sentence.  The guidelines, however, provide for a longer term of

Defendant's Sentencing
Memorandum: 1

imprisonment. One of the primary reasons for the long sentence is based on Mr. Root's conduct that occurred approximately 30 years ago involving minors. While a sentence of imprisonment is appropriate, a sentence within the guideline range is greater the necessary to meet the goals of sentencing. Instead, a sentence of 84 months, and 10 years of supervised release is sufficient but not greater than necessary to meet the goals of sentencing.

## I. Base Offense Level and Enhancements.

Mr. Root previously submitted his objections the Presentence Investigation Report and Suggested Special Conditions. [ECF No. 68].

## II. Departures.

Mr. Root is not seeking a downward departure.

## III. Sentencing Under 18 U.S.C. § 3553(a)

In determining an appropriate sentence, the Court must consider the sentencing factors of § 3553(a), as well as the nature and circumstances of the offense and the characteristics of the defendant in fashioning a sentence. The sentence imposed by the Court must be "sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85 (2007).

**1. Nature and Circumstances of the Offense**.

Mr. Root came to the attention of law enforcement during an investigation that occurred between October 10, 2021, and November 8, 2021. An agent connected to

a Peer-to-Pear file sharing program and saw an electronic device sharing files of known or suspected images of child pornography. The investigation revealed the computer sharing the files had an IP address that returned to an address in Toppenish, WA, which was determined to be Mr. Root's address. A description of the child pornography files shared between October 10, 2021, and November 8, 2021, is in the PSIR. [ECF No. 61 at ¶¶s12-15].

On January 5, 2022, a search warrant was executed at Mr. Root's residence resulting in the seizure of computer equipment. On January 13, 2022, a computer forensic analysis was conducted on one computer, resulting in the location of child pornography to include images and videos. Mr. Root admitted the possession of child pornography and the use of file sharing programs. Mr. Root also made other admissions about conduct with minors that occurred over thirty years ago that is not part of the relevant conduct. *Id.* at ¶¶s17, 48-61.

Considering the nature and circumstances of the offense, a term of imprisonment is warranted. However, the guideline range in the PSIR is greater than necessary to meet the goals of sentencing. A sentence of 84 months and 10 years of supervised release sufficient to meet the goals of sentencing.

**2. History and Characteristics of Robert Ray Root**.

Mr. Root is 53 years old and has had a difficult life. His mother and father separated when he was just 3 years old. Mr. Root's grandmother raised him for

several years, until he reunited with his mother. Mr. Root's mother began a relationship with William Root, and Mr. Root recalls his mother and stepfather drinking, arguing and family members engaged in physical fights, including the siblings. Mr. Root and his sister, Tracy Clark, both recall being placed in foster care, but could not recall the reason for being placed in foster care. Mr. Root could not recall if he was sexually abused as a child, but believed he was due to his experiences as a child. When he was a teenager, Mr. Root realized he was sexually abused while at parties when he was drinking and using drugs. *Id.* at ¶¶s93-97.

As a teenager and young adult Mr. Root used drugs and consumed alcohol. He was exposed to alcohol at a young age by his mother and drank alcohol for many years until the age of 21. He also stopped using drugs when he was 21. Mr. Root relapsed and used alcohol in 2004, which led to his last DUI conviction. To help him address his alcohol abuse issues, Mr. Root completed both inpatient and outpatient treatment, and attended alcoholic anonymous for 5 years. *Id.* at ¶¶s109-111.

When he was 19 years old, Mr. Root sought psychiatric treatment because he began experiencing visual hallucinations and behaviors like his mother who suffered from schizophrenia. Mr. Root was also diagnosed with paranoid schizophrenia and has experienced hallucinations throughout his life. At Yakima County Jail, Mr. Root saw a mental health counselor and received medication which seemed to help him. When he was released from custody, Mr. Root saw Ken Schaffer, a psychologist at

Defendant's Sentencing Memorandum: 4

Ken Shafer & Associations, and he was diagnosed with schizophrenia, multiple episodes, currently in full remission; persistent depressive disorder, served, in partial remission; and generalized anxiety disorder.  Mr. Root attended treatment sessions with Mr. Schaffer.  *Id.* at ¶¶s103-108.

In addition to experiencing depression, anxiety and schizophrenia, Mr. Root also suffers from sensory neuropathy, a progressive disorder causing nerve pain throughout his body.  Mr. Root feels pain throughout his body with anything his body comes in contact with, such as clothing or shoes.  While at the Yakima County Jail, Mr. Root needed special shoes to help him with his foot pain.  Mr. Root consistently feels pain in left foot and lower back due to a bulging disc and was diagnosed with a degenerative and discogenic back disorders in a 2017 3-year medical review, along with finding of Schizophrenia Spectrum and Other Psychotic Disorders.  *Id.* at ¶¶s98-102.  Because of his mental health and physical disabilities, Mr. Root cannot work and was determined disabled, and receives social security.  Before be being unable to work, Mr. Root was employed.  He worked at Legends Casino in various capacities, he worked at a steel mill, and other jobs.  Mr. Root also obtained his GED and attended college at Heritage for two semesters.  *Id.* at ¶¶s112-117.

It is clear Mr. Root has endured many hardships throughout his life, and still does.  He is in constant pain, and he suffers from mental disorders, which have left him unable to maintain employment.  He was abandoned by his mother and father for

Defendant's Sentencing Memorandum:  5

a period of time. When he returned to live with his mother, Mr. Root witnessed domestic violence as a boy and spent time in foster care, along with his sister. According to one his brothers, their mother encouraged the siblings to fight for entertainment. *Id.* at ¶97. Even with so many obstacles he's faced, Mr. Root has addressed some of his health issues and substance abuse issues. Mr. Root sought medical attention for his pain, he sought mental health counseling for his mental disorders, and he completed inpatient and outpatient treatment. Mr. Root has family support and lives with his sister. His sister describes Mr. Root as a "good brother." *Id.* at ¶96. Mr. Root also maintains contact with his daughter. *Id.* at ¶95.

    Mr. Root recognizes that what he did was wrong and that he will be imprisoned. The question is what sentence meets the goals of sentencing under 3553(a)? The guideline range of imprisonment is significant. This range, though, is largely due to conduct that occurred almost 30 years ago that is not related to this offense of conviction. During his interview with agents, Mr. Root made admissions about inappropriate conduct with minors that occurred in the 90's. There is no indication that similar conduct has occurred since then. To be clear, in no way is Mr. Root, or defense counsel, minimizing the conduct that occurred many, many years ago, but to sentence Mr. Root based on what occurred almost 30 years ago is unnecessary to meet the goals of sentencing.

Defendant's Sentencing
Memorandum:  6

Here, considering the nature and circumstances of the offense and Mr. Root's history and characteristics, a sentence of 84 months and 10 years of supervised release is sufficient to meet the goals of sentencing. This sentence is significant for someone like Mr. Root who experiences pain daily and suffers from mental health issues. His time while incarcerated will be much more difficult than someone in good health.

Further, a greater sentence than proposed by Mr. Root is unnecessary because Mr. Root has shown he can make positive changes in his life that protect the public, such as completing inpatient and outpatient treatment and attending alcoholic anonymous. Since 2004, Mr. Root has no consumed alcohol or drugs and no longer drives while intoxicated. More recently, Mr. Root sought mental health counseling upon his release from custody pending trial in this matter, and has done well while on pretrial release, except for a recent violation, which has been addressed. Mental health counseling, sex offender treatment and pain management will help Mr. Root and the community more than imprisoning him for a significant period.

Mr. Root is remorseful for his actions and understand what he did was wrong. However, Mr. Root has shown he is amenable to rehabilitation. Based on his limited criminal history and willingness to participate treatment, a sentence of 84 months imprisonment and 10 years of supervised release will protect the public and deter Mr. Root from future criminal conduct.

Defendant's Sentencing Memorandum: 7

**3. The guidelines do not support a sentence within the guideline range**.

In child pornography cases, sentencing courts can vary from the guidelines based on policy disagreements with them because they are not based on any empirical data. *See United States v. Henderson*, 649 F.3d 955, 963 (9th Cir. 2011). The Ninth Circuit noted that the child pornography guidelines "were not developed in a manner 'exemplify[ing] the [Sentencing] commission's exercise of its characteristic institutional role.'" *Henderson* at 960, *citing Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Instead, the child pornography guidelines were implemented because of mandatory legislation and "specific congressional directives to the Commission to amend the Guidelines." *Henderson* at 963. As the Ninth Circuit noted, the child pornography guidelines have been amended 9 times during their 23 years of existence. *Id.*

Because the child pornography guidelines often result in harsh sentences, the Sentencing Commission has expressed concerns regarding the child pornography guidelines and wants Congress to give them authority to change the guidelines. *See, e.g.*, U.S.S.C., *Federal Child Pornography Offenses*, at 320-26 (Dec. 2012); *United States v. Jenkins*, 854 F.3d 181, 190 (2d Cir. 2017) (noting that Sentencing Commission has "effectively disavowed" the child pornography Guideline, which "can easily generate unreasonable results"); *United States v. Mallatt*, 2013 WL 6196946 at *8-12 (D. Neb. Nov. 27, 2013) (concluding that the Guidelines "are not a reliable indicator of the Sentencing Commission's view of what a fair sentence should be in nonproduction

Defendant's Sentencing
Memorandum: 8

child pornography cases . . . made obvious by the Commission's December 2012 report, criticizing § 2G2.2 and recommending major revisions to the Guidelines"); *United States v. Donaghy*, 2010 WL 2605375 at *2 (E.D. Wisc. June 24, 2010) (citing cases describing how Sentencing Commission "actively opposed" certain Guideline enhancements). As a result, judges have especially wide discretion to disagree with the excessive sentences such guidelines produce. *See, e.g.*, *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1104 (N.D. Iowa 2009) (concluding that "§ 2G2.2 should be rejected on categorical, policy grounds, even in a 'mine-run' case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case."); *see also Spears v. United States*, 551 U.S. 261 (2009).

Courts from across the country recognize that "[l]ong terms of imprisonment for non-acting-out offenders have been strongly attacked as unsound and as fundamentally deviating from the Guidelines overarching policy and expertise." *Mallet* at 12; (citing cases). As a result, sentences imposed by courts have been significantly lower than the guideline range. *Id.*

While Mr. Root's offense is serious, the child pornography guidelines are clearly excessive based on the history of these guidelines and the disagreement with these guidelines by many courts across the country. Mr. Root is not asking the Court to ignore the guidelines, but he argues that a sentence within the guideline range is greater than necessary to meet the goals of sentencing. Instead, a sentence of 84

Defendant's Sentencing Memorandum: 9

months imprisonment and 10 years of supervision is sufficient to deter Mr. Root from future criminal conduct, protect the public, and promote respect for the law and just punishment.

**4. Restitution and Special Assessments**.

After the Court determines the full amount of the victims' losses, Mr. Root requests the Court impose the minimum restitution allowed. Based on the number of images Mr. Root possessed, it appears his role regarding the victim's losses is minimal. [ECF No. 61 at ¶¶s20-28].

Mr. Root requests the Court impose a minimal assessment under the Amy, Vicky, And Andy Child Pornography Victim Assessment Act, so any monetary obligations he's required to pay will be applied to restitution. Mr. Root also requests the Court find he is indigent and not impose the $5,000 assessment under the Justice for Victims of Trafficking Act.

**Conclusion**.

Mr. Root respectfully requests the Court impose a sentence of 84 months imprisonment and 10 years of supervised release. Mr. Root also requests the Court recommend he be placed at FCI Englewood in Littleton, Colorado, where sex offender treatment is available.

Defendant's Sentencing
Memorandum: 10

Dated: October 24, 2023.

Respectfully Submitted,

s/Alex B. Hernandez, III
Alex B. Hernandez, III, 21807
Attorney for Robert Ray Root
Federal Defenders of Eastern
Washington and Idaho, Attorneys for
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 fax
Ben_Hernandez@fd.org

## CERTIFICATE OF SERVICE

I certify that on October 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to: Ann Wick, Assistant United States Attorney, and Carrie A. Valencia, United States Probation Officer.

s/Alex B. Hernandez, III
Alex B. Hernandez III, 21807
Attorney for Robert Ray Root
