Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT ROOT,<br><br>Defendant. | Case No.: 22-CR-2018-SAB<br><br>**UNITED STATES'<br>SENTENCING MEMORANDUM** |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, submits the following memorandum setting forth the United States' position at sentencing. The United States recommends that the Court sentence Defendant to a term of imprisonment of 188 months, followed by a life term of supervised release. The United States also requestions an order of restitution in the amount of not less than $3,000 per victim.

## INTRODUCTION

Defendant has spent approximately 30 years of his 54 years on this planet seeking out, deriving pleasure from, and sharing with other like-minded individuals, videos and pictures which document the rape, sexual abuse, sexual exploitation, and molestation of hundreds if not thousands of minor children. Each distinct viewing,

**UNITED STATES' SENTENCING MEMORANDUM - 1**

distribution, and download constituted an act of victimization by Defendant. Worse, Defendant acted on his sexual interest in minors for a period of years, causing one little girl a lifetime of horrible memories and pain.

The United States agrees with the procedural history detailed in paragraphs one through 7 of the initial Presentence Investigation Report (hereinafter "PSR"). ECF No. 61. The United States disagrees with paragraph eight, as Defendant violated the conditions of his release by possessing an internet-capable device; the United States anticipates an update to the PSR. Lastly, the United States agrees with the offense conduct summarized in paragraphs 11 through 18 of the PSR.

## DEFENDANT'S OBJECTIONS

While Defendant did not object to any factual matters, Defendant did file a belated objection to a sentencing enhancement based on his repeated hands-on molestation of minors, as well as to certain recommended special conditions geared towards supervision of Defendant as a sex offender. *See* ECF No. 68. The first objection is to the application of the pattern of activity enhancement found in United States Sentencing Guidelines Manual § 2G2.2(b)(5). There, the guidelines provide for a five-level enhancement where the defendant has committed "two or more separate instances of sexual abuse or sexual exploitation of a minor." U.S.S.G. § 2G2.2 n. 1. The additional objections challenge supervised release conditions relating to Defendant's use of electronic devices, the methods used to verify that Defendant is not using the devices to commit further child pornography crimes or access material that would impede his success in sex offender treatment, and the use of polygraph testing to ensure Defendant's compliance with the terms and conditions of supervision.

The United States submits that the PSR correctly calculated Defendant's total offense level, including application of the challenged sentencing enhancement. The United States further submits that the recommended supervision terms are appropriate. The timing of Defendant's objections, however, did not afford the United States

**UNITED STATES' SENTENCING MEMORANDUM - 2**

sufficient time to fully address Defendant's objections herein. The United States will respond to Defendant's objections in a separate filing and/or at the sentencing hearing.

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### I. Statutory Maximum and Minimum Sentence

For Defendant's convictions for receipt and distribution of child pornography, the Court must impose as to each count a minimum term of imprisonment of five years and a minimum term of supervised release of five years. The Court may impose

**UNITED STATES' SENTENCING MEMORANDUM - 3**

a maximum term of imprisonment of twenty years, a fine of up to $250,000, and up to a life term of supervised release.

## II. United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A. Offense Level Calculation

The PSR correctly calculated Defendant's total offense level as 36. PSR ¶ 47. This calculation includes a pattern of activity enhancement of five levels, pursuant to USSG § 2G2.2(b)(5). The PSR correctly included this enhancement, based on Defendant's having sexually assaulted two minor females: one, a 10-year old, he assaulted when he was 19 years old; the second, well under the age of 10, he repeatedly abused over the course of years, when he was in his late twenties and dating the victim's mother. PSR ¶¶ 48 – 50; 54 – 60.

### B. Criminal History Calculation

The PSR correctly calculated Defendant's criminal history category as category I. PSR ¶ 83.

### C. Advisory Guideline Range

Based upon a total offense level of 36 and a criminal history category of I, the advisory guideline imprisonment range is 188 to 235 months.

## IMPOSITION OF SENTENCE

### I. Imposition of a Sentence under 18 U.S.C. § 3553

A. 18 U.S.C. § 3553(a) factors

1. The nature and circumstances of the offense

The nature and circumstances of Defendant's offense support a 188-month sentence. After downloading child pornography via peer-to-peer networks for approximately three decades (back to the 1990s), Defendant was finally caught when

**UNITED STATES' SENTENCING MEMORANDUM - 4**

a federal agent acting in an undercover capacity downloaded child pornography files from Defendant on three distinct dates. PSR ¶¶ 12-17. The file names were obviously child pornography indicative, *e.g.*, "(Pthc)-8Yo Boy Fucks 6Yo Girl, She Cries For Mom . . ." and ". . . Pedofilia 9Yo Abuse Kids Fucking Raped . . . ." PSR ¶ 14. Three of the files were described in detail, all videos, one of which was 25 minutes long; the children depicted in the videos were estimated to be between the ages of 8 and 12 years old. PSR ¶¶ 13-15. The forensic review of Defendant's computer revealed 5,046 images and 108 videos of child pornography, including at least one of the files downloaded by the undercover agent.

When contacted by law enforcement, Defendant guessed they were there for "Internet problems," specifically "pirating," "torrents," and "child porn." PSR ¶ 17. Defendant identified several peer-to-peer networks he had used since the 1990s to share child pornography. Defendant said he felt compelled to download child pornography, comparing it to a bad habit that he could not help and acknowledging that it was pleasurable to him. PSR ¶ 17. Defendant sexually satisfied himself to videos of child rape, each time committing a crime and victimizing the minors depicted therein. Put another way, Defendant was sexually aroused by – and for 30 years consumed – the documentation of the degradation and humiliation and exploitation of little kids at the mercy of their abusers.

2. The history and characteristics of the defendant

Defendant's history and characteristics further support a 188-month term of prison. While Defendant's criminal history includes repeated driving while intoxicated convictions and serious charges in recent years of assault and battery, domestic violence, and "Abduction-Domestic Violence," which certainly do not cut against imposition of a prison sentence in this case, it is the fact that Defendant is a repeat hands-on sexual perpetrator that warrants the most attention. Defendant's sexual misconduct with minors goes back at least to the age of 19, when he put two fingers

**UNITED STATES' SENTENCING MEMORANDUM - 5**

between the legs of a 10-year-old girl. PSR ¶ 49. In his middle to late twenties, Defendant sexually abused his girlfriend's daughter, when she was approximately 3 to 7 or 8 years old. PSR ¶¶ 50-55. Defendant described the minor as groomed and hypersexual. *Id*. Defendant said the minor would "force" herself on him and that he finally gave into her desires to be with him after a couple of years. *Id*. Defendant described rubbing his penis against the little girl's vagina until ejaculation and licking her. *Id*. Defendant also stated that if a 14 or 15-year-old girl was "active" he would touch her in a sexual manner. *Id*.

Law enforcement agents were able to track down Defendant's ex-girlfriend's daughter, who is now an adult, who confirmed Defendant's sexual abuse occurred over the course of years. PSR ¶ 55. She disclosed in a forensic interview that although she didn't know when the abuse started, her earliest memory of Defendant was when she was five years old, and the abuse ended when she was eight. *Id*. She became emotional when recalling a specific incident: Defendant would take her into her mother's bedroom, turn off the light, and take off her clothes. Defendant told her he had a special treat for her, but she had to guess. *Id*. He told her to open her mouth and he placed "something" round and warm inside, telling her not to bite it or bite down. *Id*. At the time she thought it was cucumber, because something in her mouth was the texture of ranch dressing. *Id*. Defendant told her she was "Daddy's special girl." *Id*. He also told her she would be in trouble if she told anyone, that it was their special secret. PSR ¶ 58. She described many other instances of sexual acts committed by Defendant over the years.

Defendant's repeated sexual abuse of his girlfriend's daughter is uncontested. Had it been reported years ago and Defendant convicted of the crime, he would presently be facing a sentence of 15-40 years. 18 U.S.C. § 2252A(b)(1). There is no reason to treat Mr. Root any differently than any other federal offender who, like him, was caught committing child pornography crimes after molesting a child.

**UNITED STATES' SENTENCING MEMORANDUM - 6**

> 3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

Crimes involving the sexual abuse of a minor child are among the most, if not *the* most, serious crimes that can be committed. The harm to child pornography victims as a result of their images being trafficked online is well-established and irrefutable. *See, e.g., United States v. Williams*, 553 U.S. 285, 307 (2008) ("Child pornography harms and debases the most defenseless of our citizens."); *United States v. Monzel*, 746 F.Supp.2d 76 (D.D.C. 2010) ("It is beyond dispute that child pornography victims suffer from trauma as a result of their sexual abuse, and that the knowledge that anonymous individuals continue to view and distribute images of their abuse exacerbates the victims' feelings of fear, anxiety, and powerlessness."); Report to the Congress: Federal Child Pornography Offenses, United States Sentencing Commission (December 2012), at vi (child pornography offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children"); Emily F. Rothman, Chapter 10: Child Sexual Abuse Imagery, Pornography and Public Health, Oxford University Press, August 2021 at 165. https://academic.oup.com/book/39816/chapter/339938530 ("Some argue that new damage is done to a child each time videos or images of their victimization or abuse are viewed because it causes fresh humiliation and pain to know people are deriving pleasure from their exploitation.") (citing Gewirtz-Meydan, Lahav, Walsh, and Finkelhor, 2019, "Psychopathology Among Adult Survivors of Child Pornography." *Child Abuse & Neglect* 98: 11).

Receiving and sharing photographs and videos of a child's sexual abuse furthers the demand for continued production of such material and are vile crimes on their own merit. A sentence of 188 months recognizes this, promotes respect for the law, and is just punishment.

**UNITED STATES' SENTENCING MEMORANDUM - 7**

4. <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

Given Defendant's commission of both online child pornography crimes and repeated hands-on sexual abuse of a minor child, the connection between the two types of crimes cannot be ignored, given the Court's duty under 18 U.S.C. § 3553(a)(2)(C) to impose a sentence that protects the public. A review of available studies with information on over 4,400 child pornography offenders found that 55% of the offenders admitted to engaging in direct sexual contact with a minor at some point.[1] Fifty-five percent. Only 13% of the offenders had an official criminal record for hands-on sexual crimes. *Id*. This suggests that roughly 40% of offenders who have been caught engaging in online child pornography crimes have also committed contact sexual crimes *unknown to the judicial system*. In other words, over half of the child pornography offenders that have come before the Court are likely to be contact sex offenders. However, the Court is only likely to be aware of the contact crimes in roughly 13% of the cases. Nevertheless, what the data demonstrates at its most basic level is that there is a documented and strong correlation between child pornography viewing and direct contact offenses. Defendant is among the 55% of offenders who have done both.

Additionally, child pornography offending is a valid diagnostic indicator of pedophilia.[2] And pedophilia is a strong predictor of sexual recidivism. *See State v.*

---

[1] Seto, Hanson, and Babchishin (2010) "Contact Sexual Offending by Men with Online Sexual Offenses." *Sexual Abuse* 23, no. 1: 124– 145.

[2] Seto, Cantor, and Blanchard (2006) "Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia." *Journal of Abnormal Psychology*, 2006, Vol. 115, No. 3, 610-615; *see also* Diagnostic and Statistical Manual of Mental Disorders,

**UNITED STATES' SENTENCING MEMORANDUM - 8**

*Eppinger*, 91 Ohio St.3d 158, 160-161 (2001) (recognizing the increased risk of recidivism for pedophiles, relying on studies that estimated the rate of recidivism as being as high as 52 percent for rapists and 72 percent for child molesters). [3] According to the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, a diagnosis of pedophilic disorder requires an individual to (1) have "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children" over a period of at least six months; (2) to have acted on these urges or to be distressed by them; and (3) to be at least 16 years old and at least five years older than the child victim.

These factors provide a mechanism wholly independent of the parties' arguments to assess the severity of Defendant's conduct and sexually motivated character. The uncontested facts in this case establish that Defendant fulfills each of

---

5th Edition (2013) at 698 ("The extensive use of pornography depicting prepubescent children is a useful diagnostic indicator of pedophilic disorder. This is a specific instance of the general case that individuals are likely to choose the kind of pornography that corresponds to their sexual interests.").

[3] *See also* Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, <u>Sex Offender Management Assessment and Planning Initiative</u> (hereinafter *SOMAP)*, U.S. Department of Justice, March 2017 at 63, 84 https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/somapi_full_report.pdf ("The most important distinction among child sexual abusers is whether they are pedophilic or nonpedophilic, because pedophilia has been shown to be a strong predictor of sexual recidivism.") (citing Hanson & Bussiere (1998) Predicting relapse: A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology*, 63, 348–362).

**UNITED STATES' SENTENCING MEMORANDUM - 9**

the three conditions required of a diagnosis of pedophilic disorder. Defendant acted on his recurrent and sexually arousing urges by engaging in sexual activity with a prepubescent child over a period of years, well over the mere six months required. At 19, he was nine years older than his 10-year-old victim. In his mid and late twenties, he was over 20 years older than his victim when she was between 3 and 8 years old. Even at 53 years of age, by his own admission, Defendant continues to be interested in and willing to engage in sexual acts with a 14 or 15 year old. Thus, Defendant's characteristics that are compatible with a pedophilia diagnosis are also suggestive of a high likelihood of sexual recidivism.

Regardless of whether Defendant is formally classified as a pedophile, his uncontested actions – uncontested crimes – demonstrate that he is a danger to society. His sexual interest in minors goes well beyond seeking out and viewing child pornography online; he has acted on this sexual interest, more than once, and presents an inclination to continue to engage in sexual conduct with adolescent minors if the opportunity arises. Moreover, Defendant explains away his reprehensible actions as the fault of his four-year old victim: he finally gave into her desires to be with him. PSR ¶ 50.

A sentence of 188 months in this case is necessary to protect the public – particularly the most vulnerable among us. Such a sentence also serves to send a message of deterrence, both generally and individually.

### 5. The kinds of sentences available

The Court must sentence Defendant to a term of prison of no less than 60 months, followed by a term of supervised release of not less than five years. The maximum sentence that may be imposed is 20 years in prison and up to a life term of supervised release. Additional fines and special assessments apply. Probation is precluded by 18 U.S.C. § 3561(a)(1).

**UNITED STATES' SENTENCING MEMORANDUM - 10**

### 6. The established sentencing range

Based upon a total offense level of 36, a criminal history category of I, the advisory guideline imprisonment range is 188 to 235 months.

### 7. The need to avoid unwarranted sentence disparities

"The purpose of the sentencing guidelines is 'to eliminate disparities among sentences nationwide.'" *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) (quoting *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008)). The government's recommended sentence is within the advisory guideline range. Further, it is consistent with the mandatory minimum of 15 years required for offenders who have committed child pornography trafficking offenses, like Defendant, after committing child sexual abuse crimes, like Defendant.

### 8. The need to provide restitution to any victims of the offense

The law requires restitution be paid in an amount of not less than $3,000 per victim. As of the filing of this Memorandum, only seven of Defendant's victims have submitted a request for restitution. The United States requests restitution in accordance with those requests and will file additional details of those requests under a separate pleading.

## B. Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)

The Guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). It remains, however, that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough

**UNITED STATES' SENTENCING MEMORANDUM - 11**

approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The Guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

## II. $5,000 Special Assessment of the JVTA

Assessments paid under the JVTA are deposited into the Domestic Trafficking Victims Fund for grants to enhance programs that assist trafficking victims and provide services for victims of child pornography.

Under the JVTA, the Court "shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under ... (3) chapter 110 (relating to sexual exploitation and other abuse of children)." 18 U.S.C. § 3014(a)(3). In imposing a JVTA assessment, the non-indigency of a defendant is the governing deliberation and the statute does not require the court to consider the factors enumerated in 18 U.S.C. § 3572 with respect to the entry of a non-JVTA fine. *See generally* 18 U.S.C. § 3014 (no reference to or requirement upon the court to evaluate the 18 U.S.C. § 3572 factors when imposing a JVTA assessment).

Whether a defendant is non-indigent for the purposes of a JVTA assessment is determined not by a static snapshot of a defendant's financial condition at the time of sentencing, but instead should be based on considerations of a defendant's current and future financial condition.

> [A] district court must resolve two basic questions in
> assessing the defendant's indigency: (1) Is the defendant

**UNITED STATES' SENTENCING MEMORANDUM - 12**

> impoverished now; and (2) if so, does the defendant have the means to provide for himself so that he will not always be impoverished?
>
> …
>
> Because the defendant's obligation to pay persists for at least twenty years after his sentencing, it would make little sense for the district court to consider only the defendant's financial condition at the time of sentencing. That snapshot in time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing. Rather, the defendant's employment prospects and earnings potential are probative of his ability to pay the assessment—and are fair game for the court to consider at sentencing.

*United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019).

Although not singularly dispositive, the government notes that Defendant's counsel is appointed. *See Shepherd*, 922 F.3d at 759 (fact that defendant is represented by appointed counsel is "probative but not dispositive" of indigence under § 3014, because indigence is not the standard for appointment of counsel).

Second, Defendant may be required to participate in the Bureau of Prison's Inmate Financial Responsibility Program and pay quarterly towards any outstanding monetary penalty.  If ordered to pay $25 per quarter, Defendant could pay $1500 through the IFRP by the time he is released to supervised release after a 15-year prison term.  Additionally, Defendant receives $800 monthly in social security funds, has minimal debt ($565), and does not have any dependents for whom he is financially responsible.  It appears he has had the benefit of free housing with family during the pendency of this case.

Rather than request a fine, the government respectfully requests the Court consider imposing the JVTA special assessment, depending on the sentence ultimately imposed.

**UNITED STATES' SENTENCING MEMORANDUM - 13**

### III. $35,000 Special Assessment of the AVAA

The Court may consider imposition of an assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA). Assessments paid under the AVAA are deposited into the Child Pornography Victims Reserve, which funds are available to victims in partial or full satisfaction of their restitution claims. 18 U.S.C. §§ 2259B(b), 2259(d). "It is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish. Such an aggregate causation standard reflects the nature of child pornography and the unique ways that it actually harms victims." AVAA, PL 115-299, December 7, 2018, 132 Stat 4383.

Under the AVAA, the Court shall assess not more than $35,000 on any person convicted of production of child pornography. 18 U.S.C. § 2259A(a)(1). This assessment is "in addition to any other criminal penalty, restitution, or special assessment authorized by law." § 2259A(a). Imposition of an AVAA assessment "does not relieve a defendant of, or entitle a defendant to reduce the amount of, any other penalty by the amount of the assessment." 18 U.S.C. § 2259A(2).

In determining the amount of AVAA assessment to impose, the Court shall "consider the factors set forth in sections 3553(a) and 3572." 18 U.S.C. § 2259A(c). These factors include, in addition to the 3553(a) factors discussed above:

> (1) The defendant's income, earning capacity, and financial resources;
> (2) The burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially depending on the defendant, relative to the burden that alternative punishments would impose;
> (3) Any pecuniary loss inflicted upon others as a result of the offense;

**UNITED STATES' SENTENCING MEMORANDUM - 14**

>(4) Whether restitution is ordered or made and the amount of such restitution;
>(5) The need to deprive the defendant of illegally obtained gains from the offense;
>(6) The expected costs to the government of any imprisonment, supervised, release, or probation component of the sentence; [and]
>(7) Whether the defendant can pass on to consumers or other persons the expense of the fine.

18 U.S.C. § 3572(a).

Here, as discussed above, Defendant has the capacity for future earnings through participation in the Bureau of Prison's Inmate Financial Responsibility Program. Defendant is currently 54 years old and has no dependents for whom he is financially providing.  He receives $800 monthly.

While Defendant could be facing restitution requests from many more of the victims depicted in his recovered collection of over 5,000 files, all of whom would be entitled to a mandatory restitution award of at least $3,000, only seven victims are requesting restitution.  Even if only the 31 Series victims recognized by the NCMEC requested restitution, the minimum total to be awarded would be $93,000.  Presently, the total requested on behalf of seven victims is $44,000.  The restitution award ordered by the Court will have an effect on Defendant's ability to contribute financially to victims for his share of aggregate harm through the AVAA assessment. AVAA, PL 115-299, December 7, 2018, 132 Stat 4383.  The greater the restitution award, the more difficulty for Defendant to contribute to the AVAA fund.  If Defendant was subject to a greater restitution order, that would be a § 3572 factor weighing against imposition of an AVAA assessment. 18 U.S.C. § 3572(a)(4).

If the Court imposes both an AVAA assessment and a JVTA assessment, Defendant's payments would first go to the AVAA assessment. 18 U.S.C. § 2259A(d)(2).

**UNITED STATES' SENTENCING MEMORANDUM - 15**

## **CONCLUSION**

Application of 18 U.S.C. § 3553 supports a sentence of 15 years in prison, followed by a life term of supervised release, for Defendant's commission of the crimes of distribution and receipt of child pornography.  The government submits that such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Dated:  October 24, 2023.

        Vanessa R. Waldref
        United States Attorney


*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

**UNITED STATES' SENTENCING MEMORANDUM - 16**

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

**UNITED STATES' SENTENCING MEMORANDUM - 17**